Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 7164 | DATE | 2/23/2001 |
| CASE TITLE | Teresa LeClercq, et al vs. The Lockformer Company, et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9 Mar. 01 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiffs' motion for class certification pursuant to Rule 23(b)(3) is GRANTED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | FEB 28 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 25 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
FEB 23 2001

Judge Harry D. Leinenweber
U.S. District Court

TERESA LeCLERCQ, AL LeCLERCQ,
JAN MATISIAK, WALT MATISIAK,
individually, and on behalf of
all persons similarly
situated,

      Plaintiffs,

 v.

THE LOCKFORMER COMPANY, a
division of MET-COIL SYSTEMS
CORPORATION, a Delaware
corporation; and MESTECK,
INC., a Pennsylvania
corporation,

      Defendants.

Case No. 00 C 7164

Judge Harry D. Leinenweber

DOCKETED
FEB 28 2001

## MEMORANDUM OPINION AND ORDER

  Plaintiffs, Teresa LeClercq, Al LeClercq, Jan Matisiak, and Walt Matisiak, brought this action individually and on behalf of a class of persons similarly situated against Defendants, The Lockformer Company, Met-Coil Systems Corporation, and Mesteck, Inc. (collectively, "Lockformer"), seeking entitlement to response costs pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and alleging negligence, private nuisance, trespass, strict liability for an unreasonably dangerous activity, unjust enrichment, and willful and wanton misconduct. Before the Court is Plaintiffs' motion to certify the class pursuant to FED. R. CIV. P. 23.

**BACKGROUND**

The following facts are taken from Plaintiffs' complaint. Defendant The Lockformer Company existed as an Illinois corporation from about December 6, 1946 until October 2000 when it was merged with Met-Coil. Since about June 2000, Defendant Mestek has owned or operated Lockformer and Met-Coil. Lockformer owns and operates a manufacturing facility located at 711 Ogden Avenue in Lisle, Illinois, and Met-Coil owns property directly adjacent to the Lockformer property. Plaintiffs own and reside in property located directly south of the Lockformer and Met-Coil properties. Plaintiffs rely solely on private wells as their source of water for their homes.

At all relevant times, Lockformer maintained a metal fabrication business at the Lockformer property, and as part of that business Lockformer maintained a metal degreasing operation. Beginning in 1968 and continuing through at least 1997, Lockformer's degreaser utilized chlorinated solvents, including trichloroethylene ("TCE"). Plaintiffs allege that the TCE was stored in a rooftop storage tank and that when the rooftop tank was filled, solvents, including TCE, were spilled directly onto the ground. Plaintiffs allege that the hazardous substances released from the Lockformer property have migrated and continue to migrate in liquid and vapor form toward Plaintiffs' homes contaminating the soil, groundwater, and domestic water supply in the area.

Plaintiffs further allege that Lockformer has known for many years of this threat to Plaintiffs and has intentionally and knowingly failed to notify Plaintiffs of these threats. Plaintiffs allege that Lockformers' negligent acts and omissions include improper handling, storage, use, disposal, investigation and cleanup of the hazardous substances and improper maintenance and operation of equipment using TCE and other hazardous substances.

Plaintiffs proposed class consists of persons who satisfy the following criteria: "(a) [t]hey own or reside in property in the area near the Lockformer and Met-Coil Properties; and (b) [t]heir property has been impacted, or a threat exists that it will be impacted, by hazardous substances released at or from the Lockformer and/or Met-Coil Properties." Plaintiffs seek to enjoin Lockformer from allowing further contamination of Plaintiffs' property, to require Lockformer to abate the health risk posed by the contamination, to require Lockformer to fully investigate and remediate the contamination of their properties, to reimburse Plaintiffs for the costs that they have incurred and will incur, and to recover compensatory and punitive damages for their injuries.

## DISCUSSION

The Federal Rules of Civil Procedure set forth a number of prerequisites that must be present before a court may approve a class. First, the Plaintiffs must satisfy the four requirements of

Rule 23(a), which include numerosity, typicality, commonality, and adequacy of representation. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Furthermore, at least one of the Subsections of Rule 23(b) must also be satisfied. In making this determination, the Court does not consider the merits of the case but instead, as with a motion to dismiss, takes the allegations in the complaint as true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S. Ct. 2140, 2152 (1974). Plaintiff shoulders the burden of demonstrating that a class exists, and district courts have broad discretion in ruling on a plaintiff's request. *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997).

In addition to the four express requirements in Rule 23, there are two implied requirements: first, an identifiable class must exist (the "definiteness" requirement) and second, the named representatives must be members of the class. *Gomez v. Illinois St. Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). An identifiable and definite class exists if "its members can be ascertained by reference to objective criteria." *National Organization for Women v. Scheidler*, 172 F.R.D. 351 (N.D. Ill. 1997), *citing Gomez v. Illinois St. Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). A class will satisfy the definiteness requirement as long as it is defined in terms of objective criteria like the defendants' conduct as opposed to the state of mind of the parties. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977

(7th Cir. 1977). The parties should not have to delve into the merits of the case to determine membership in the class. *Toney v. Rosewood Care Center, Inc.*, No. 98 C 0693, 1999 WL 199249, *5 (N.D. Ill. Mar. 31, 1999). If a class is amorphous or indefinite, however, the court has broad discretion to limit or redefine the class to bring it within Rule 23. *See Gomez*, 117 F.R.D. at 397, n. 2; 7B Charles A. Wright, Arthur R. Miller, *Federal Practice and Procedure*, § 1760, at 128-29 (2d ed. 1986).

In the complaint, Plaintiffs seek certification of the following class:

> The Class consists of all persons who satisfy the following criteria:
>
> (a) They own or reside in property in the area near the Lockformer and Met-Coil Properties; and,
>
> (b) Their property has been impacted, or a threat exists that it will be impacted, by hazardous substances released at or from the Lockformer and/or Met-Coil Properties.

Complaint, at ¶ 34. Lockformer argues that the Plaintiffs have not defined an ascertainable class and have not provided any objective criteria for membership in the class. Lockformer asserts that the "area near the Lockformer and Met-Coil Properties" and property that "has been impacted, or a threat exists that it will be impacted" are indefinite and vague and that the Court has not been provided with sufficient guidance to determine the critical elements of Plaintiffs' class.

In the Plaintiffs' reply they further define the class, and in effect they propose two possible classes based on the declaration of their expert, Dr. Roy Ball, and upon the Agreed Protective Order in the case filed by the Illinois Attorney General and DuPage County State's Attorney. In his affidavit, Dr. Ball stated that "[t]he homes that are located between the Lockformer Site Southern Property Boundary (North), Maple Avenue (South), Kingston Avenue (West), and I-355 (East), have an actual or potential risk of chlorinated solvent exposure emanating from the Lockformer Site." (Plaintiffs Reply, Exh. 2, at ¶ 25.) The Agreed Order in the Attorney General's case covers the area

> on the north and south sides of Front Street, Reidy Road, Hitchcock Avenue, And Gamble Drive. This area will be bound to the west by Kingston Avenue, and will include any homes on the east side of Kingston Avenue and bounded to the east by Westview Lane including any homes on the east side of Westview Lane.

(Plaintiffs' Reply, Exh. 5, at ¶6.)

Plaintiffs have submitted maps obtained from the DuPage County Assessor's Office that demonstrate the geographic boundaries of these two potential classes. (Plaintiffs' Reply, Exh.6 at Declaration Exhibits 1, 2.) These maps indicate that Dr. Ball's proposed area is significantly larger and contains many more houses and therefore potential class members than the area covered by the Agreed Protective order, and that the area in the Agreed Protective Order is fully within the area proposed by Dr. Ball. Furthermore,

Plaintiffs' counsel represent about 130 people, "all of whom own and/or reside in approximately seventy-five (75) properties within the boundaries set forth in both" the Agreed Order and Dr. Ball's proposed area. The Court has carefully reviewed the evidence submitted by plaintiffs regarding testing of wells, all of which comes from the smaller defined area as stated in the Agreed Order. Further, the list of the addresses of the class members and all of the houses appear to be in the smaller area defined in the Agreed order.

Therefore, the Court will utilize its discretion to redefine the class as follows:

> The class will consist of those persons who own or reside in property that has been impacted, or a threat exists that it will be impacted, by chlorinated solvents released at or from the Lockformer and/or Met-Coil Properties. This property is located directly south of the Lockformer property and includes the property on the north and south sides of Front Street, Reidy Road, Hitchcock Avenue and Gamble Drive. This area is bounded to the West by Kingtson Avenue, including any homes on the east side of Kingston Avenue and bounded on the east by Westview Lane including any homes on the east side of Westview Lane.

In response to Lockformer's arguments that Plaintiffs' testing shows inconsistent results withing this area, the Court notes that a hearing on the merits of Plaintiffs' case is not appropriate at this juncture and Rule 23 does not provide for it. *Eisen*, 417 U.S. at 177-78, 94 S. Ct. at 2152-53; *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 383 (D. Col. 1993). Here, there is preliminary

evidence that TCE is present in the wells in the class area. This is sufficient evidence that the class definition is reasonable, and this class definition is subject to modifications as the record is developed. *Cook*, 151 F.R.D. at 383; *Boggs v. Divested Atomic Corporation*, 141 F.R.D. 58, 61-63 (S.D. Ohio 1991).

Therefore, the Court will proceed with the analysis under Rule 23(a) and (b) utilizing this class definition. At this point, it is an appropriate class because it is based on objective criteria and upon the conduct of the Defendants. *See, e.g., O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998); *National Organization for Women, Inc. v. Scheidler*, 172 F.R.D. 351, 359 n. 4 (N.D. Ill. 1997); *Cook*, 151 F.R.D. at 383; *Boggs*, 141 F.R.D. at 61-63; *Compare, Diagle v. Shell Oil Company*, 133 F.R.D. 600, 602-3)(D. Colo. 1990). As with any class action, this Order may be altered or amended before a decision on the merits. FED. R. CIV. P. 23(c)(1). Using this class definition the named Plaintiffs are members of the class, and the Court will proceed to the express requirements for a class action.

### Numerosity

The first Rule 23(a) requirement is numerosity, *i.e.*, that "the class is so numerous that joinder of all members is impracticable." Plaintiffs must show some evidence of the number of class members, but precise numbers are not required; a good faith estimate of the number is sufficient. *Rivera v. Grossinger*

*Autoplex, Inc.*, No. 00 C 442, 2000 WL 1280904, at *3 (N.D. Ill. Sept. 1, 2000). Here, Plaintiffs allege that over one hundred homes are affected, and the class, therefore, consists of more than two hundred people. Further, Plaintiffs have submitted a list of 130 clients who live in the proposed geographical area. This is sufficient to satisfy the numerosity requirement.

### Commonality

Second, Rule 23(a)(2) requires that the class representatives' claims possess "questions of law or fact common to the class." Plaintiffs must demonstrate that there is at least one question of law or fact common to the class. *Rivera*, 2000 WL 1280904, at *4. The common questions, however, need not be identical, and a "common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). A common nucleus of operative fact is typically found where "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). *See also Gomez*, 117 F.R.D. at 399. Factual variations among class members' grievances do not defeat a class action. *Keele*, 149 F.3d at 594.

Defendants argue that Plaintiffs fail to meet the commonality requirement because "the propriety of injunctive or declaratory relief turns on a condition of the individual circumstances of each class member." (Defendants' Resp., at 6.) Defendants argue that

the data that Plaintiffs submitted with their motion reflect widely varying amounts of TCE and other chemicals in the putative class members' wells ranging from amounts in excess of federal drinking water standards to no detectable contamination. In response, Plaintiffs point out that Defendants are improperly arguing the merits of the case, that any claimed variation in the contamination wells does not change the fact that the contamination flows from the same source, and that commonality is alleged.

Defendants' argument does stray too far into evaluating the merits of Plaintiffs' case. Plaintiffs have alleged that Defendants have engaged in a common course of conduct over the years that has contaminated the water source that the putative class members use. It is the same conduct that allegedly caused the injury to all of the Plaintiffs, and there are common questions of law and fact. "Where the defendant engages in a single course of conduct that results in injury to the class as a whole, a common core of operative facts is usually present." *John v. DeLeonardis*, 145 F.R.D. 480, 483 (N.D. Ill. 1992). Therefore, the Court finds that Plaintiffs have established commonality.

### Typicality

The third Rule 23(a) requirement, typicality, is met "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Edmondson v. Simon*, 86 F.R.D. 375, 381 (N.D. Ill.

1980). Whether the Plaintiffs' claims are typical of those of the class members they represent is closely related to the commonality inquiry. *Keele*, 149 F.3d at 595. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id., citing De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotation omitted). The Seventh Circuit has explained that the typicality requirement directs the "district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente*, 713 F.2d at 232. Defenses unique to the named representatives or to a small subset of the plaintiff class may render the claims sufficiently atypical to destroy the required typicality. *Frietsch v. Refco, Inc.*, No. 92 C. 6844, 1994 WL 10014, at *2 (N.D. Ill. Jan. 13, 1994).

Defendants make a very similar argument here as they did against commonality, and argue that different facts are required to prove the claims of different class members. The Court disagrees. Plaintiffs allege that Defendants course of conduct has caused them all the same type of injury. *Hurd v. Monsanto Company*, cited by Defendants, is plainly distinguishable. 164 F.R.D. 234, 238-39 (S.D. Ind. 1995). In *Hurd*, the plaintiffs sought certification in a personal injury case of a class of 3,500 workers who were

allegedly exposed to PCB at a plant where they worked. As Defendants point out, each plaintiff was exposed to PCB in different ways and in different amounts, "[t]hus, no single proximate cause inquiry applies equally to each putative class member; no one set of operative facts establishes liability." *Id.* at 239. The case alleged by plaintiffs is distinctly different. Here, Plaintiffs, who specifically do not allege personal injury claims, allege that Defendants' misuse and mishandling of TCE - the conduct - was the same for all of the putative class members and caused the same damage - contamination of the groundwater, soil and wells. Furthermore, even though some of the facts underlying each person's claims may vary, they do not create any conflicts between the class members. *See Cook*, 151 F.R.D. at 378. As the claims arise from the same alleged conduct, Plaintiffs have met the typicality requirement.

### Adequacy

To satisfy the adequacy requirement, the class representatives must demonstrate that: (1) they do not have any antagonistic or conflicting claims with other members of the class; (2) they have a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) their counsel is competent, qualified, experienced, and able to vigorously conduct the litigation. *Sebo v. Rubenstein, M.D.*, 188 F.R.D. 310, 316 (N.D. Ill. 1999). Here, Defendants argue that Plaintiffs make only conclusory assertions

and that two of the members of the class have a conflict of interest with others in the putative class because they own several pieces of property and "presumably rent" it to other members of the class. First, class certification should not be denied by speculative suggestions of potential conflicts. *Rosario v. Livaditis*, 963 F.2d 1013, 1018-19 (7th Cir. 1992). Second, Defendants' other argument regarding the differing levels of contamination goes to the ultimate merits of the case and has already been addressed. Third, Defendants have not challenged the adequacy of Plaintiffs' counsel nor asserted that the representatives do not have sufficient interest in the outcome of the case, and the Court concludes that Plaintiffs' counsel appear qualified to litigate this action and have been vigorously litigating this action thus far.

### Rule 23(b)

The Court will first address class certification under Rule 23(b)(3). An action may be maintained as a class action under Rule 23(b)(3) where the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. To certify a class under this section, the Court must also examine the interests of the class members in individually controlling the prosecution or defense of

separate actions, the nature and extent of any litigation regarding the controversy already commenced by class members, the desirability of concentrating the litigation of the claims in the particular forum, and the difficulties likely to be encountered in the management of a class action. FED. R. CIV. P. 23(b).

Defendants' primary arguments against certification under Rule 23(b)(3) mirror its arguments against a finding of commonality and typicality. Defendants argue that the variability in contamination between the putative class members will require individualized proof and that individualized issues regarding causation and damages predominate. Defendants heavily rely on *Thomas v. FAG Bearings Corporation*, 846 F. Supp. 1400 (W.D. Mo. 1994). In *Thomas*, the Court denied class certification under Rule 23(b)(3) in a contamination case stating that "while there are undoubtedly common issues of law and fact, such as whether [Defendant] released TCE into the groundwater, the individual issues of causation and damage so overshadow those in numerosity and complexity to render a class action unhelpful." *Id.* at 1404. The Court explained that the differing amounts of contamination if the putative class members' wells indicated that the proof of causation and damages will be different for each plaintiff. *Id.*

However, Plaintiffs' argument that this case is appropriate for class treatment under Rule 23(b)(3) also finds support. In *Sterling v. Velsicol Chemical Corporation*, the court affirmed the

district court's certification of a class under Rule 23(b)(b) in a contamination case and addressed the split in authority in these type of cases:

> [t]he problem of individualization of issues often is cited as a justification for denying class action treatment in mass tort accidents. While some courts have adopted this justification in refusing to certify such accidents as class actions, numerous other courts have recognized the increasingly insistent need for a more efficient method of disposing of a large number of lawsuits arising our of a single disaster or course of conduct . . . Where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy.

855 F.2d 1188, 1196-97. The court further explained that almost identical evidence would be required to establish the level and duration of contamination and the defendant's liability, and that "[t]he single major issue distinguishing the class members is the amount of damages, if any, that each sustained" which should be reserved for individualized treatment. *Id.* at 1197.

There is ample support for certifying a class action in a contamination case even though there may be individualized issues of damages. *See, e.g., Bates v. Tenco Svcs., Inc.*, 132 F.R.D. 160 (D. S.C. 1990)(class action was superior because common questions including the cause of the contamination and the defendant's liability predominated over the individual questions of proximate

cause and damages for each plaintiff); *Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 713 (D. Az. 1993)(common issues predominated because factual and legal issues relating to the defendant's liability did not differ between the plaintiffs, and thus certification was appropriate); *Boggs*, 141 F.R.D. at 67(rejecting defendant's argument that individualized nature of plaintiffs' claims made certification improper and finding that common issues of liability, including nature of the emissions, history of the plant, and the kinds of remedies to address actual and future emissions "overwhelm[ed] individualized issues").

In this case, the common issues predominate, and if these claims were tried separately the amount of repetition would be great. Further, proceeding as a class action is superior to other methods for adjudication of this case. The proof regarding the history of operations, the spillage, the impact on the land, soil, and water, possible remedies, etc. would be identical. *See Boggs*, 141 F.R.D. at 67 ("[i]t would be neither efficient nor fair to anyone, including defendants, to force multiple trials to hear the same evidence"). Repetitive discovery for individual cases on the same core issues would be wasteful for both the courts and the parties. While there are individualized issues regarding damages, if any, suffered by putative class members, the Court finds that the most appropriate and efficient way to proceed at this juncture is to certify a class for injunctive relief and liability issues

but reserve the determination of monetary damages, if needed, for individualized treatment. It is, therefore, unnecessary to evaluate class certification under Rule 23(b)(1) and (2).

## CONCLUSION

For the foregoing reasons, Plaintiffs motion for class certification pursuant to Rule 23(b)(3) is GRANTED.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:  February 23, 2001