Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 7164 | DATE | 5/2/2002 |
| CASE TITLE | Teresa LeClercq, et al vs. The Lockformer Company, et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 6 2002 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 254 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | 02 MAY -3 PM 3:25 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

| | |
|---|---|
| TERESA LeCLERCQ, AL LeCLERCQ, individually, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE LOCKFORMER COMPANY, a division of MET-COIL SYSTEMS CORPORATION, a Delaware corporation, MESTEK, INC., a Pennsylvania corporation, and HONEYWELL INTERNATIONAL, INC., a Delaware corporation,<br><br>Defendants. | DOCKETED<br><br>MAY 6 – 2002<br><br>Case No. 00 C 7164<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Teresa LaClercq and Al LeClercq, individually and on behalf of a class of similarly situated persons (the "Plaintiffs"), bring this class action against Defendants, The Lockformer Co. ("Lockformer"), Met-Coil Systems Corp. ("Met-Coil"), Mestek, Inc. ("Mestek")(collectively, "the Lockformer Defendants"), seeking entitlement to cost recovery pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a)(Count I and X), the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a) (Counts II, III, IV and V), and alleging negligence (Count VI), private nuisance (Count VII), trespass (Count VIII),

254

and willful and wanton misconduct (Count IX). Before the Court is Plaintiffs' Motion for Partial Summary Judgment pursuant to FED.R.CIV.P. 56.

**BACKGROUND**

Lockformer existed as an Illinois corporation from about December 6, 1946 until October 2000 when it was merged with, and became a division of, Met-Coil. Since about June 2000, Mestek has owned or operated Lockformer and Met-Coil. Lockformer operates a manufacturing facility located at 711 Ogden Avenue in Lisle, Illinois, and Met-Coil owns property directly adjacent to the Lockformer property. Plaintiffs own and reside on property located directly south of the Lockformer and Met-Coil properties. Plaintiffs rely solely on private wells as the source of water for their homes.

At all relevant times, Lockformer maintained a metal fabrication business at the Lisle facility, and as part of that business Lockformer maintained a metal degreasing operation. Beginning in 1968 and continuing through at least 1997, Lockformer's degreaser utilized chlorinated solvents, including trichloroethylene ("TCE"). Plaintiffs allege that the TCE was stored in a rooftop storage tank and that when the rooftop tank was filled, solvents, including TCE, were spilled directly onto the ground. Plaintiffs contend that the hazardous substances released from the Lockformer property have migrated and continue to migrate

in liquid and vapor form in a southerly direction toward Plaintiffs' homes, contaminating the soil, groundwater, and domestic water supply in the area. Plaintiffs further allege that Lockformer has known for many years of this threat to Plaintiffs and has intentionally and knowingly failed to notify Plaintiffs of these threats. Plaintiffs allege that Lockformer's negligent acts and omissions include improper handling, storage, use, disposal, investigation and cleanup of the hazardous substances, and improper maintenance and operation of equipment using TCE and other hazardous substances. Plaintiffs now move for partial summary judgment seeking a limited finding that the Lockformer site is the source of class area groundwater contamination.

## MOTION FOR SUMMARY JUDGMENT

### *Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis University*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the party who bears the burden of proof on an issue may not rest on the pleadings, but must

affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001). A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence [offered by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

## DISCUSSION

Plaintiffs' seek an order granting partial summary judgment and finding that the Lockformer site is the source of class area groundwater contamination. However, it should be noted that imposition of CERCLA liability does not require a finding that TCE from Lockformer, to the exclusion of all other sources, caused the contamination in the class area. Plaintiffs need only establish that it is more likely than not that the release or threatened release of hazardous substances from the facility occurred, and that the release caused them to incur response costs. *See Nutrasweet Co. v. X-L Engineering Corp.*, 933 F.Supp. 1409, 1420

(N.D. Ill. 1996), *aff'd.*, 227 F.3d 776 (7th Cir. 2000); *Dedham Water Co. v. Cumberland Farms Dairy Inc.*, 889 F.2d 1146, 1154 (1st Cir. 1989)(stating that "every court that has addressed this issue . . . has held that it is not necessary to prove actual contamination of plaintiff's property by defendant's waste in order to establish liability under CERCLA . . . [N]or is there anything in the statute suggesting that a 'two-site' case be treated differently than a one-site case, where the issue is whether a release or threat of release caused 'response costs'"). This being said, Plaintiffs evidence of release and migration of TCE from the Lockformer site to class area groundwater is substantial. Plaintiffs point to the following facts, many generated by Lockformer's own consultants, supporting the conclusion that Lockformer is the site of the class area groundwater contamination.

### *Release Of TCE At The Lockformer Site*

TCE was used at the Lockformer facility from March 1969 to approximately February 2001. In this period, Plaintiffs' expert Roy Ball estimates that approximately 90,000 gallons of TCE were delivered to the Lockformer site. This estimate is based on deposition testimony stating that TCE deliveries took place once or twice a month and purchase summary notes, deposition testimony, and shipping orders from throughout this period indicating a range of anywhere from 46 to 526 gallons of TCE per delivery. Defendants contest both the amount of TCE delivered to the Lockformer facility

and the amount released. Defendants do not, however, challenge the central fact the TCE was released into the soil and shallow groundwater at the Lockformer facility.

### *Groundwater Contamination From The Lockformer Site Release Migrated In A Southerly Direction Toward And Into The Class Area Groundwater*

Plaintiffs point to a substantial amount of evidence indicating that the TCE released on the Lockformer site contaminated the groundwater and migrated in a southerly direction, contaminating the groundwater in the class area. The facts indicating a southerly migration of TCE from Lockformer to the class area include:

- A. The surface elevation of the Lockformer site ranges from 715 feet above sea level at the north end of the property to 684 feet above sea level at the southern portion of the site. South of the Lockformer site, the surface elevation continues to decrease to 670 feet above sea level before it begins to increase again toward the class area.

- B. The Illinois Environmental Protection Agency ("IEPA") determined that the groundwater flows from the Lockformer property in a southerly direction toward the class area based on ground water elevation measurements collected by Parsons Engineering Science personnel from three class area piezometers installed by Lockformer's own environmental consultant Carlson Environmental and two Lockformer monitoring wells completed in the bedrock.

- C. Lockformer environmental consultant Ron St. John stated on October 12, 2001 that "all the indications we have on the Lockformer site is,

> in the bedrock, that the ground water flows to the southeast . . ."

D. Lockformer consultant Carlson Environmental stated in a letter of October 20, 1999 that "Ground water gradient generally to the south of source area." This belief that the groundwater flows in a southerly direction away from the Lockformer site was repeated in letters dated January 14, 2000 and February 4, 2000.

E. Water samples were taken by both Clayton Environmental and other experts. The samples produced "non-detect" readings for TCE in the areas directly north, east, and west of the Lockformer site. High TCE concentrations were detected in the class area water wells directly south of the Lockformer site. The highest TCE concentrations came from the water wells closest to the Lockformer site and the concentrations decrease as one moves further south away from the Lockformer site. The water wells to the east and west of the area of high TCE concentration produced "non-detect" readings for TCE.

F. Lockformer's expert, Dr. Devlin, stated in a letter dated March 11, 2002 that "I agree the Lockformer site could be a contributor of some of the contamination in the Class Area . . ."

To contradict the evidence supporting a southerly movement of groundwater away from the Lockformer site, Lockformer expert Thomas Prickett mentions that water elevation in two bedrock monitoring wells, MW 1100D and MW 1101D, indicated water movement to the north and west *on one day*, November 30, 2001. However, these wells are only two of approximately fifty such wells in the area, are located approximately 80 feet apart, roughly parallel to one another on an

east-west axis, and are located outside both the Lockformer site and the class area. Tellingly, Mr. Prickett does not mention what the other forty eight wells in the area indicated on that day, or any other day for that matter. This "mere scintilla" is insufficient to rebut Plaintiffs' evidence and the contradictory statements of Lockformer's own consultants.

Lockformer also attempts to make much of the fact that the Ellsworth Industrial Park in nearby Downers Grove is currently being investigated by the IEPA and U.S. EPA as a possible site of TCE release. The Ellsworth Industrial Park is located to the east of the class area. With no reference to actual hydrological or geological data, Lockformer expert Prickett made an isolated and conclusory statement in his report that the regional bedrock groundwater flow is westward from Ellsworth Industrial Park. Prickett supported this conclusion by simply taking a tiny portion of a map depicting the piezometric surface of the DuPage County Silurian dolomite aquifer from August 1960 (indicating the elevation of nonpumping water levels in DuPage county), drawing arrows from Ellsworth toward the class area, and writing "Example flowpath[s]" next to the arrows. There are several problems here. First, Prickett's use of the 1960 map is extremely misleading in that it focuses only on the alleged gradient between Ellsworth and the class area while omitting reference to the actual gradient between Lockformer and the class area. Second, recent hydrological

data collected over a two-year period from 1997-1998 by the Village of Downers Grove on bedrock groundwater flow in the area indicates that the class area is not hydrologically down-gradient from the Ellsworth Industrial Park. Finally, Prickett's opinion was contradicted by Lockformer's own consultant, Ron St. John, when he stated in a hearing that "all the indications we have on the Lockformer site is, in the bedrock, that the groundwater flows to the southeast, towards the industrial park."

Neither Prickett, nor any other Lockformer expert, has provided the Court with its own independent model, testing results of soil samples, hydrologic or other technical data to support the speculation that the Ellsworth Industrial Park or any other neighboring site is the actual source of the TCE in the class area. The assertion of "mere possibility . . . [is] not enough to forestall summary judgment." *Hamm v. Runyon,* 51 F.3d 721, 724 (7th Cir. 1995); *see also Nutrasweet,* 933 F.Supp. at 1422 (stating that "mere speculation as to possible [alternative] sources of contamination is not enough" to defeat Plaintiff's motion for partial summary judgment on issue of CERCLA liability). Presented with substantial credible evidence of the Lockformer site as the source of the TCE in the class area, and with nothing more substantial to support Defendants' hypothesis of other possible sources of TCE, no reasonable jury could return a verdict in favor of Defendants finding that Lockformer is not the source of the TCE

in the class area groundwater. Regardless of the "battle of the experts" on issues of modeling and methodology, there is no genuine dispute that the Lockformer site is the source of the TCE in the class area groundwater. *See Nutrasweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785 (7th Cir. 2000).

### CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: May 3, 2002