Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 7164 | DATE | 4/29/2002 |
| CASE TITLE | Theresa LeClercq, et al vs. The Lockformer Company, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    ENTER MEMORANDUM OPINION AND ORDER: Defendant Mestek's Motion for Summary Judgment is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | MAY 6 2002 | |
| X | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | 255 |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | | 02 MAY -3 PM 5: 27 | date mailed notice | |
| WAP | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THERESA LeCLERCQ, AL LeCLERCQ,
individually, and on behalf of
all persons similarly
situated,

              Plaintiffs,

v.

THE LOCKFORMER COMPANY, a
division of MET-COIL SYSTEMS
CORPORATION, a Delaware
corporation, MESTEK, INC., a
Pennsylvania corporation, and
HONEYWELL INTERNATIONAL, INC.,
a Delaware corporation,

              Defendants.

Case No. 00 C 7164

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiffs Teresa and Al LeClercq, individually and on behalf of a class of similarly situated persons (the "Plaintiffs"), bring this class action against Defendants, The Lockformer Co. ("Lockformer"), Met-Coil Systems Corp. ("Met-Coil"), Mestek, Inc. ("Mestek")(collectively, "the Lockformer Defendants"), seeking entitlement to cost recovery pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a)(Count I and X), the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(Counts II, III, IV and V), and alleging negligence (Count VI), private nuisance (Count VII), trespass (Count VIII), and willful and wanton



misconduct (Count IX). Before the Court is Defendant Mestek's motion for summary judgment pursuant to FED.R.CIV.P. 56.

## BACKGROUND

Lockformer existed as an Illinois corporation from about December 6, 1946 until October 2000 when it was merged with, and became a division of, Met-Coil. Since about June 2000, Mestek has owned or operated Lockformer and Met-Coil. Lockformer owns and operates a manufacturing facility located at 711 Ogden Avenue in Lisle, Illinois, and Met-Coil owns property directly adjacent to the Lockformer property. Plaintiffs own and reside on property located directly south of the Lockformer and Met-Coil properties. Plaintiffs rely solely on private wells as their source of water for their homes.

At all relevant times, Lockformer maintained a metal fabrication business at the Lisle facility, and as part of that business Lockformer maintained a metal degreasing operation. Beginning in 1968 and continuing through at least 1997, Lockformer's degreaser utilized chlorinated solvents, including trichloroethylene ("TCE"). Plaintiffs allege that the TCE was stored in a rooftop storage tank and that when the rooftop tank was filled, solvents, including TCE, were spilled directly onto the ground. Plaintiffs allege that the hazardous substances released from the Lockformer property have migrated and continue to migrate in liquid and vapor form toward Plaintiffs' homes contaminating the

soil, groundwater, and domestic water supply in the area. Plaintiffs further allege that Lockformer has known for many years of this threat to Plaintiffs and has intentionally and knowingly failed to notify Plaintiffs of these threats. Plaintiffs allege that Lockformer's negligent acts and omissions include improper handling, storage, use, disposal, investigation and cleanup of the hazardous substances, and improper maintenance and operation of equipment using TCE and other hazardous substances.

## **MOTION FOR SUMMARY JUDGMENT**

### *Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis University*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001). A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute

between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Mestek's motion asserts that it may not, as a matter of law, be held liable under either Plaintiffs' federal CERCLA and RCRA claims or Plaintiffs' pendent common law claims because of its parent-subsidiary relationship with Lockformer/Met-Coil. Mestek's potential liability under federal and common law theories will be analyzed separately and taken in turn.

### Parent Corporation Liability Under CERCLA and RCRA

As an initial matter, the statutory definition of "owner" and "operator" are the same under RCRA and CERCLA, and the standards for owner and operator liability under the two statutes are identical. *See Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1574 (5th Cir. 1988). The following analysis of whether Mestek may be liable as an "owner" or "operator" of the Lisle facility applies equally to Plaintiffs CERCLA and RCRA claims.

Parent corporation liability under CERCLA may be predicated on a finding that the parent is either "owner" or "operator" of the offending facility as those terms are used in CERCLA. *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 92 (1st Cir. 2001).

- 4 -

Plaintiffs contend that Mestek is both operator and owner of the Lisle facility. Mestek contends that it is neither. The analysis of whether Mestek is an owner or operator of the Lisle facility for purposes of CERCLA liability is governed by the Supreme Court's decision in *United States v. Bestfoods*, 524 U.S. 51 (1998).

### *Operator Liability*

A parent corporation's liability under CERCLA's "operator" provision is not governed by the rules of corporate veil piercing but is premised instead on the idea of direct liability for one's own actions. *Id.* at 65. Under *Bestfoods*:

> If any such act of operating a corporate subsidiary's facility is done on behalf of a parent corporation, the existence of the parent-subsidiary relationship under the state corporate law is simply irrelevant to the issue of direct liability. . . . So, under CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, *an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental matters.*

*Id.* at 66-67 (emphasis added).

Applying this standard and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs' evidence on this issue is clearly sufficient to create a genuine issue of material fact so as to prevent summary judgment in Mestek's favor. The record before the Court indicates that, after acquiring Lockformer, Mestek took

immediate and substantial actions to manage and direct the operations relating to the TCE leakage at the Lisle Lockformer facility. Specifically, Plaintiffs point to deposition testimony and exhibits indicating that:

1) Within ten days of Mestek's purchase of Met-Coil/Lockformer, Lockformer's environmental consultant was directed to stop sending invoices to Lockformer and begin forwarding all of its TCE related invoices directly to Mestek for payment.

2) Mestek thereafter made the decision to fire Lockformer's environmental consultant, Carlson Environmental. Ronald St. John of Clayton Environmental was picked by Mestek's legal department and hired as the new environmental consultant for Lockformer's TCE problem. Mestek retained St. John only after his meeting with Reed and Mestek President Dewey at Mestek's headquarters in Massachusetts.

3) At his deposition, Lockformer/Met-Coils President James Heitt ("Heitt"), did not now who hired Clayton Environmental but claimed in his deposition that he had final authority on all environmental issues at the Lisle facility.

4) Mestek President Dewey "continually" advised Heitt on the Lisle facility TCE issue, despite having no official operational role at Lockformer.

5) Mestek employee Richard Caldwell ("Caldwell"), worked out of the Lisle facility on Mestek's behalf, reviewing all vendor invoices relating to TCE contamination before forwarding such bills to Mestek for payments. Caldwell also provided Reed and Dewey of Mestek with regular reports on the TCE situation in Lisle. In stark contrast, Lockformer/Met-Coil President Heitt and Lockformer Plant Manager Svehla both stated in their depositions that they had "no idea" regarding Caldwell's position at the

> facility or to whom he reports, despite Heitt's statement in his deposition that he and Svehla were part of a small team that manages environmental matters at the Lockformer facility.

6) Although not named as a party to the Illinois Attorney General's lawsuit seeking to enjoin further TCE contamination at the Lisle facility, Mestek approved and directed Lockformer/Met-Coil to enter into the Agreed Order.

7) Mestek manages Lockformer/Met-Coil's relationship with its TCE contamination insurers, even thought Mestek is not an insured under those policies.

8) Mestek attorney McClure was present at the meeting with the first family to come forward with evidence of TCE contamination. The well water test results from this family's well were immediately sent for review to McClure, seeking advice. Lockformer's settlement with this family could not go forward until it was approved by Mestek Chairman and CEO Reed.

9) Before the environmental consultant forwarded its Interim Site Investigation report to the IEPA for approval, it first sought authorization from Mestek.

10) Lockformer is nominally a division of Met-Coil. However, since Mestek's purchase of both companies in June 2000, Met-Coil's Board of Directors has never met and never had any discussions or taken any action whatsoever regarding the TCE contamination in Lisle.

To counter this evidence, Mestek points to the affidavits of Mestek's CEO Reed and Met-Coil's President Heitt. Heitt contends that he, along with other Met-Coil employees, make all environmental decisions at Lockformer. Beyond this bare assertion,

nowhere in its briefs supporting its motion does Mestek point to specific testimony or examples of Heitt or other Met-Coil employees mentioned in his deposition actually exercising final authority over TCE-related issues at the Lisle facility. Plaintiffs have met their burden of creating a genuine issue of material fact on the issue of Mestek's direct liability as an "operator" under CERCLA and RCRA. *See United States v. Kayser-Roth Corp.*, 272 F.3d 89, 92-93 (1st Cir. 2001); *Geraghty & Miller v. Conoco, Inc.*, 234 F.3d 917, 928-929 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2592 (2001)(reversing trial court's entry of summary judgment that environmental consultant was not a CERCLA operator and finding that disputed material facts regarding control of the site precluded summary judgment).

### *Owner Liability*

Plaintiffs must clear a higher hurdle to hold a parent corporation liable under CERCLA for contamination occurring at a facility ostensibly under the control of its subsidiary. The Supreme Court has noted that, in enacting CERCLA, Congress did not intend to abrogate the fundamental corporate law principle that a parent corporation is not generally liable for the acts of its subsidiaries. *Bestfoods*, 524 U.S. at 60. However, this does not prevent piercing of the corporate veil when the formalities of corporate structure would be misused to accomplish wrongful purposes. *Id.* at 62. Accordingly, a parent corporation may be

charged with derivative CERCLA liability as an "owner" of a facility only when the conditions for piercing the corporate veil have been met. *Id.* at 63-64.

The Seventh Circuit has addressed veil piercing under CERCLA, but has not reached the precise issue here of derivative "owner" liability in the parent-subsidiary context. See *Browning-Ferris Industries of Illinois, Inc. v. Richard Ter Maat*, 195 F.3d 953, 959-61 (7th Cir. 1999)(finding insufficient facts to pierce corporate veil and hold shareholder personally liable under CERCLA). The question of whether federal common law or state law governs the determination to pierce the corporate veil for CERCLA liability has likewise been left open by both the United States Supreme Court and the Seventh Circuit. *Id.* at 960. There is, however, no significant difference between Delaware and federal common law on the application of "alter ego" analysis and piercing the corporate veil. See *Bestfoods*, 524 U.S. at 64 n.9; *Pearson v. Component Technology Corp.*, 247 F.3d 471, 485 n.2 (3rd Cir. 2001).

Among the factors looked at under both Delaware and federal common law are: (1) inadequate capitalization of the subsidiary; (2) action in the interest of the parent rather than the subsidiary; (3) failure to observe corporate formalities; (4) payment of dividends. (4) non-functioning of officers and directors (5) absence of corporate records. *Compare Harper v. Delaware Valley Broadcaster, Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990),

*with Pearson*, 247 F.3d at 485 (applying federal common law). While no single factor standing alone will justify disregarding the corporate entity, some combination of these factors, along with a general element of fraud, injustice or unfairness must be present. *Harper*, 743 F. Supp. at 1085 (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, at *10 (Del. Ch. Sept. 19, 1989). Finally, there is a general sense that federal courts are more likely to pierce the corporate veil in order to effectuate federal policy, lest state corporate laws be permitted to frustrate federal objectives. *See Bestfoods*, 524 U.S. at 64 n.9; *Pearson*, 247 F.3d at 485 n.2.

Mestek claims that Plaintiff's "have not alleged, nor can they allege" any facts sufficient to justify piercing of the corporate veil under the alter ego test. Mestek also claims that an Illinois court has already found that Mestek is not liable for similarly alleged tortious conduct. Mestek is wrong on both counts. First, the Illinois court decision in question simply found that the plaintiffs *failed to allege* facts sufficient to justify piercing Met-Coil's corporate veil on a motion to dismiss. Second, Plaintiffs present numerous facts in the record sufficient to create a genuine issue of material fact on this question.

Plaintiffs point to deposition testimony and exhibits indicating that Met-Coil/Lockformer ceased to have a meaningful, separate corporate existence following the June 2000 merger with

Mestek. Such facts, and reasonable inferences from those facts, include: (1) Met-Coil has no checking account or emergency cash fund of its own; (2) Met-Coil must have any of its non-inventory expenditures in excess of $1,000 approved by Mestek CEO Reed; (3) Met-Coil's payroll and all accounts payable are handled by Mestek; (4) Mestek collects payments from Met-Coil's customers; (5) Met-Coil no longer prepares its own financial statements, Mestek does this; (6) Met-Coil's Board of Directors has not met since June 2000 and Met-Coil has not paid dividends since June 2000; (7) other than approving conversion to Mestek's 401(k) plan, Met-Coil's Board of Directors has taken no substantive action since June 2000 and has never discussed or acted upon the TCE issue; and, most incredibly, (8) Met-Coil President and Board Member Heitt, at his deposition, stated that he does not know how Met-Coil company officers are chosen and suggests that "some other board of directors" might decide that.

Mestek points to case law holding that many of these facts, taken individually, are an insufficient basis for piercing the corporate veil. It is correct in so far as, had Plaintiffs only established any one of these facts in isolation, summary judgment in Mestek's favor would be appropriate. However, when considered together and drawing all reasonable inferences in the Plaintiffs' favor, Plaintiffs have adequately met their burden of putting forward enough facts to create a genuine issue for trial. Mestek

does dispute vigorously many of the facts and inferences put forth by Plaintiffs, but this only adds greater weight to the conclusion that there are genuine issues here requiring resolution at trial.

**Parent Corporation Liability for Common Law Claims**

The Court will not enter into a choice of law analysis of which law applies to the alter ego question. The differences between the Delaware and Illinois alter ego analysis are insignificant, and the outcome would be the same under either state's law. *See Retzler v. Pratt & Whitney Co.*, 309 Ill.App.3d 906, 917, 723 N.E.2d 345, 354 (1st Dist. 1999); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989). Based on the factors already discussed above, and the reasonable inferences to be drawn from those facts, a reasonable jury could find in favor of the Plaintiffs on this issue.

### CONCLUSION

For the reasons set forth above, Defendant Mestek's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: April 29, 2002